Filed:  February 6, 2004

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 03-4214
(CR-02-19)

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus


WILLIAM LEE JONES,

                                        Defendant - Appellant.

---

O R D E R

---

The court amends its opinion filed January 23, 2004, as follows:

On page 4, line 6 -- the phrase "term of sixty years" is amended to read "term of sixty months."


                                For the Court - By Direction


                        /s/ Patricia S. Connor
                                Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIAM LEE JONES,

*Defendant-Appellant.*

No. 03-4214

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, District Judge.
(CR-02-19)

Argued: August 25, 2003

Decided: January 23, 2004

Before WILKINS, Chief Judge, and TRAXLER and
GREGORY, Circuit Judges.

_____

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Chief Judge Wilkins and Judge Gregory joined.

_____

## COUNSEL

**ARGUED:** Matthew Anthony Victor, VICTOR, VICTOR & HEL-
GOE, L.L.P., Charleston, West Virginia, for Appellant. Stephanie
Lou Haines, Assistant United States Attorney, Huntington, West Vir-
ginia, for Appellee. **ON BRIEF:** Kasey Warner, United States Attor-
ney, Huntington, West Virginia, for Appellee.

_____

**OPINION**

TRAXLER, Circuit Judge:

William Lee Jones, Jr., was convicted of possessing with intent to distribute 50 grams or more of cocaine base, *see* 21 U.S.C.A. § 841(a)(1) (West 1999), and possessing a firearm in furtherance of a drug trafficking crime, *see* 18 U.S.C.A. § 924(c)(1)(A)(i) (West 2000). He received a life sentence on the distribution charge and a consecutive five-year sentence on the firearm charge. Jones appeals his convictions and his sentence on multiple grounds. We affirm.

## I.   Facts

On December 28, 2001, officers from the Charleston, West Virginia Police Department responded to a report from an employee of a Charleston hotel that he had detected a strong odor of marijuana coming from one or two hotel rooms. As officers approached the room, they smelled marijuana and incense, which is commonly used to mask the odor of marijuana. Officers knocked several times on the door of room 230 and identified themselves as police officers. While waiting for a response, they heard a toilet flush and observed that a towel had been placed along the bottom of the door as if to prevent any odor from escaping the room.

After the officers knocked several times, Timothy Kinser opened the door. Kinser confirmed that he had rented room 230 and the adjoining room. Kinser granted permission for the officers to search both rooms after they explained that they wanted to investigate a report of marijuana use. In room 230, officers observed a toilet overflowing and what appeared to be marijuana and crack cocaine residue around the sink. Jones was in room 232, the adjoining room, along with three other people. One of the occupants, Michelle Miller, testified during a pre-trial hearing that, prior to the search, the group had been smoking marijuana supplied by Jones.

In room 232, officers searched a number of personal items with the consent of the individuals. Officer Steven Petty testified that, during the search, he noticed a duffle bag and, as he approached it, Jones

stated that "[w]hat you're looking for is in that bag and it's all mine, no one else's, it's all mine." J.A. 60. Officer Petty asked Jones "[w]hat am I looking for," to which Jones responded "[w]hat's in that bag." J.A. 60. Officer Petty then picked up the bag and asked Jones whether the bag belonged to him. When Jones confirmed the bag belonged to him, Officer Petty asked whether Jones would permit him to search it. Jones replied, "[s]ure, go ahead." J.A. 60. Officer Brian Kinnard, who also participated in the search, recalled a substantially similar exchange between Jones and Officer Petty.

After receiving permission, Officer Petty unzipped the bag and found a loaded 9 millimeter handgun, a locked metal box, and a set of keys. He used one of the keys to open the locked box and discovered a sizable quantity of crack cocaine and cash. It turns out that the box contained 169.5 grams of cocaine base, 66.9 grams of cocaine powder, and $7,779 in cash. Also discovered in the search of the hotel rooms were scales and a supply of plastic gloves.

Jones was charged in a three-count superseding indictment: count one charged Jones with conspiracy to distribute a quantity of cocaine powder and more than 50 grams of crack cocaine in violation of 21 U.S.C.A. § 846 (West 1999); count two charged Jones with possession with intent to distribute 50 or more grams of crack cocaine in violation of 21 U.S.C.A. § 841(a)(1); and count three charged that Jones unlawfully possessed a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C.A. § 924(c)(1)(A)(i). Following a two-day jury trial, Jones was found guilty of the substantive charges in counts two and three, but not guilty on the conspiracy charge in count one.

At sentencing, the district court attributed 1.5 kilograms of crack to Jones as relevant conduct under section 1B1.3 of the Sentencing Guidelines based on the testimony of three individuals who testified as to their extended association with Jones in the drug trade. The district court also applied two sentencing enhancements to Jones's offense level under the Guidelines. The district court imposed a two-level enhancement for obstruction of justice as a result of Jones's testimony during a pre-trial hearing to suppress the evidence recovered from the duffle bag. *See* United States Sentencing Commission, *Guidelines Manual* (U.S.S.G.) § 3C1.1 (Nov. 2002). The district court

did not find credible Jones's testimony that he did not consent to the search and concluded that the two-level increase was appropriate. Additionally, the district court applied a four-level enhancement for Jones's role as an "organizer or leader" in the criminal activity. U.S.S.G. § 3B1.1. The district court then imposed a life sentence on count two and a term of sixty months, to be served consecutively, on count three.

## II.   Pre-Trial Motions

### A.

Jones first challenges the district court's denial of his motion to suppress the drugs and the handgun seized from his bag. In considering the district court's decision on a motion to suppress, we review the court's legal conclusions de novo and its factual findings for clear error, and we view the evidence in the light most favorable to the prevailing party below. *See United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998).

The court was presented with conflicting testimony at the suppression hearing. Officers Petty and Kinnard both testified that Jones volunteered that the duffle bag belonged to him and that Jones expressly granted Officer Petty permission to search the bag. Jones, on the other hand, testified that he did not give permission for anyone to search his bag and denied that Officer Petty even asked for permission. Miller, who had been smoking marijuana with Jones before the police arrived and was present for the search, testified that she did not believe Jones granted permission to search his bag but that she was not certain of it. Miller further testified that Jones may have given the keys to the locked box to Officer Petty, but made clear she was uncertain about that fact. Miller acknowledged, however, that Jones announced to the officers that "'[e]verything that you want is in that bag.'" J.A. 93. Based on the testimony presented at the suppression hearing, the district court found that Jones in fact consented to the search of his bag by the police. This factual determination by the district court is supported by the record, and we perceive no clear error in it.*

---

*In addition to challenging the district court's conclusion that he consented to the search in the first place, Jones argues that his consent (if

Jones argues that even if he voluntarily consented to the search of the duffle bag, his consent did not extend to the locked metal box inside of the bag. We consider the question of whether the locked box fell within the scope of Jones's consent to search the bag under an "objective reasonableness" standard: "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). The district court concluded that Jones's

> consent to search the bag, coupled with his statement "Everything you want is in that bag[,]" would make a reasonable person believe Defendant's consent also extended to the locked box within the bag. This is so regardless of whether the keys were found inside the bag and beside the box, as Cpl. Petty testified, or whether [Jones] gave [Cpl.] Petty the keys, as Michelle Miller testified. Importantly, [Jones] could have limited his consent to search to prevent Cpl. Petty from unlocking the box without a warrant but failed to do so. The officer acted on [Jones's] "Sure, go ahead."

J.A. 125 (citation omitted).

In assessing the scope of the consent granted by the suspect, we begin with the object of the search — in this case, illicit drugs. *See Jimeno*, 500 U.S. at 251 ("The scope of a search is generally defined

---

any) was not voluntary. Voluntariness is a question of fact which we review on appeal for clear error. *See United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996) (en banc). We have observed that "when the lower court bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the [court] had the opportunity to observe the demeanor of the witnesses." *Id.* at 650-51 (internal quotation marks omitted). Thus, even if we are "convinced that [we] would have reached an opposite conclusion had [we] been charged with making the factual determination in the first instance, . . . [we] may not reverse the decision . . . that consent was given voluntarily unless . . . the view of the evidence taken by the district court is implausible in light of the entire record." *Id.* In view of the record as a whole, we perceive no clear error in the district court's finding of voluntariness.

by its expressed object."). The suspect may impose limits on the items or areas subject to the consent search, just as he may refuse to allow any search whatsoever in the absence of a warrant. *See id.* at 252. But, when a suspect gives his general and unqualified consent for an officer to search a particular area, the officer does not need to return to ask for fresh consent to search a closed container located within that area. *See id.* at 251 ("[I]t was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs."); *see also United States v. Gant*, 112 F.3d 239, 243 (6th Cir. 1997) (explaining that "'general consent [to a search] permits the opening of closed but unlocked containers found in the place as to which consent was given.'" (quoting Wayne R. LaFave, Search and Seizure, § 8.1(c) & n. 75 (1986)); *United States v. Battista*, 876 F.2d 201, 207 (D.C. Cir. 1989) (refusing to "turn the search of [a] bag into a game of 'Mother-may-I,' in which [officers] would have to ask for new permission to remove each article from the suitcase").

Jones argues that *locked* containers are different from *closed* containers and do not fall within the scope of a suspect's general consent to search a larger area. He is correct that a suspect's general, blanket consent to search a given area or item, by itself, would not likely permit officers to *break into* a locked container located within the area being searched. *See Jimeno*, 500 U.S. at 251-52. However, the scope of a consent search is not limited only to those areas or items for which specific verbal permission is granted. Consent may be supplied by non-verbal conduct as well. *See United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999) (finding that, by voluntarily handing over his keys, defendant consented to the search of a locked container located inside of a larger bag that defendant was allowing police to search). Thus, a suspect's failure to object (or withdraw his consent) when an officer exceeds limits allegedly set by the suspect is a strong indicator that the search was within the proper bounds of the consent search. *See United States v. Mendoza-Gonzalez*, 318 F.3d 663, 670 (5th Cir.), *cert. denied*, 123 S. Ct. 2114 (2003) ("A failure to object to the breadth of the search is properly considered an indication that the search was within the scope of the initial consent." (internal quotation marks omitted)); *Gordon*, 173 F.3d at 766; *United States v. Torres*, 32 F.3d 225, 231 (7th Cir. 1994).

We agree with the district court's conclusion that it was objectively reasonable for Officer Petty to believe that Jones's express consent to search the duffle bag extended to the locked metal box. After the officers indicated they were investigating suspected marijuana use, Jones volunteered that the object of the officers' search was contained in his duffle bag. When Officer Petty opened the bag with Jones's consent, it was reasonable to conclude that Jones was referring to the contents of the metal box. As the ostensible owner of the bag, Jones knew that the keys to the metal box were inside the bag alongside the box. Since Jones did not qualify his consent in any way, an officer could reasonably conclude that Jones expected the officers to use the keys and open the box containing the illicit drugs. Moreover, Jones confirmed the propriety of the search by not objecting to Officer Petty's use of the keys to open the locked box in Jones's presence.

B.

Jones also challenges the district court's denial of his motion to sever the conspiracy count (count one) from the substantive counts (counts two and three). Jones contends that the evidence at trial demonstrated three separate, unrelated conspiracies rather then the single conspiracy charged in count one of the indictment. Jones complains that the district court's denial of his severance motion injected into the trial conduct that was unrelated to the charges against Jones.

We will reverse a district court's decision to deny a motion to sever only if the decision amounts to an abuse of discretion. *See United States v. Montgomery*, 262 F.3d 233, 244 (4th Cir.), *cert. denied*, 534 U.S. 1034 (2001). We conclude the district court acted well within its discretion in refusing to sever count one for a separate trial.

Moreover, in view of the not guilty verdict returned by the jury on count one, we do not perceive any prejudice that could have possibly resulted from trying all three counts together. Counts two and three focused solely on events relating to the December 28, 2001 search, and Jones does not claim that the evidence is insufficient to support his convictions on those counts. The real basis of Jones's argument is that the conspiracy charged in count one was overly broad. Indeed, prior to trial, Jones moved unsuccessfully to dismiss count one on this ground. Because Jones prevailed at trial on the conspiracy charge, and

has therefore not appealed the denial of his motion to dismiss, the breadth of the conspiracy charged in count one clearly affords no basis for reversal.

### III.   Evidentiary Ruling at Trial

Jones contends that the drugs recovered during the December 28 hotel search should have been excluded because of the government's inability to establish a sufficient chain of custody with respect to the drugs recovered from Jones's bag. Jones does not include the handgun within his chain-of-custody challenge.

The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion. *See United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982). Rule 901(a) of the Federal Rules of Evidence requires that a party introducing evidence establish the authenticity of its evidence by demonstrating that "the matter in question is what its proponent claims." The chain-of-custody requirement is simply "a variation of the principle that real evidence must be authenticated prior to its admission into evidence." *Howard-Arias*, 679 F.2d at 366. The purpose of requiring the government to establish the chain of custody, therefore, is to "establish that the item to be introduced . . . is what it purports to be . . . so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with." *Id.*

Gerald Taylor, a detective assigned to the Charleston Metro Drug Unit, was called to the scene after the narcotics were discovered. Detective Taylor observed the contents of the duffle bag at that time, including plastic ziplock bags containing crack cocaine and cocaine powder and a large amount of cash. According to his testimony, Detective Taylor participated in the processing of the evidence at the metro drug unit office following Jones's arrest and then took control of those items that day. Detective Taylor further testified that he put his initials on the plastic bags, dated them, and conducted a field test of the contents to confirm the presence of cocaine. He maintained control over this material until he passed it to local DEA Agent Rick Wren for a laboratory analysis. Having often worked with the DEA, Detective Taylor was familiar with the routines followed by local

DEA agents when sending drugs for testing. He testified that the local agents typically shipped the suspected drugs via Federal Express to the DEA's mid-atlantic laboratory. Finally, Detective Taylor testified that Agent Wren followed these same general procedures in this case, as demonstrated by the markings on the sealed evidence bag indicating Agent Wren had sealed the drugs inside the bag on the same day that the search was conducted.

The government also introduced a form signed by Wren indicating that the evidence was shipped to the laboratory via Federal Express and providing a routing number. The form further indicated that the bag had been received on January 4, 2002, with its seal unbroken. Christopher Chang, a forensic chemist employed at the DEA laboratory, testified that he obtained the substances to be tested from the evidence vault at the laboratory. After performing his analysis, Chang resealed the bag and returned it to the vault. The evidence bag bears a notation that Chris Chang resealed it on January 8, 2002. Finally, Detective Taylor testified that he retrieved the evidence bag from the local DEA office and resumed custody and control of the evidence at that point. Detective Taylor indicated that the evidence bag returned from the DEA laboratory was the same one in which he had sealed the drug sample and shipped for testing.

The district court rejected Jones's chain-of-custody challenge to the admission of this evidence, concluding that

> although there is obviously the missing link of direct testimony of how the packages moved from Charleston to the DEA lab and then were returned . . . there is sufficient reliability to admit this before the jury because . . . the testimony has established that the evidence is what it purports to be and that it has not been altered in any material respect.

J.A. 357. We agree. A "'missing link'" in the chain of custody "does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material respect." *United States v. Ricco*, 52 F.3d 58, 61-62 (4th Cir. 1995). Having reviewed the testimony and other evidence in the record, we are convinced that the district judge did not

abuse his discretion in admitting this evidence. Accordingly, we reject Jones's argument.

## IV. Sentencing Challenges

### A.

Jones contends that the district court improperly attributed 1.5 kilograms of cocaine base to him as relevant conduct under U.S.S.G. § 1B1.3. We review a sentencing court's factual findings under the relevant conduct guideline for clear error. *See United States v. D'Anjou*, 16 F.3d 604, 614 (4th Cir. 1994).

At trial, Pamela Gibson, Joseph Sneed, and Darrell Barnes each testified regarding Jones's routine distribution of cocaine and cocaine base, as well as his involvement in certain specific transactions. The district court found that the sum total of crack cocaine attributable to Jones was 1.5 kilograms, as established by this testimony and the drugs recovered from Jones's duffle bag at the hotel. Jones does not challenge the district court's calculation of the amount of drugs; rather, he argues that the district court erroneously credited the testimony of Gibson, Sneed, and Barnes for sentencing purposes, despite the fact that Jones was found not guilty of conspiracy to distribute cocaine base. Thus, Jones takes the position that it was improper for the district court to attribute to him *any drugs at all* under U.S.S.G. § 1B1.3 based on the testimony of these alleged coconspirators.

The district court noted that it observed these witnesses during trial and found their testimony regarding Jones's extensive crack distribution activities to be credible. Additionally, items found during the search of the hotel corroborated the testimony that Jones had been engaged in the distribution of crack well before his arrest. This evidence, including scales, plastic gloves, and the 9 millimeter handgun are tools of the drug trafficking trade. Detective Taylor also testified that the drugs recovered during Jones's arrest were packaged for distribution. We see no clear error in the findings of the district court, particularly when its findings turn on a credibility determination that we are not in a position to second-guess. Thus, we reject this argument as well.

B.

Jones contends that the district court erred in applying a two-level enhancement to his offense level for obstruction of justice. Under U.S.S.G. § 3C1.1, the sentencing court is to increase the defendant's offense level by two levels if "the defendant willfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction" and "the obstructive conduct related to . . . the defendant's offense of conviction." The district court found that Jones obstructed justice when he testified during the suppression hearing that the officers did not seek permission to search his duffle bag and that he did not consent to the search.

Jones argues simply that the district court should not have credited the officers' testimony that the search was consensual over his contrary testimony. The record reveals that the district court was presented with a swearing contest and its finding of obstruction turned largely on a credibility determination. As an appellate court, we are "reluctant to overturn factual findings of the trial court," and "this is doubly so where the question goes to the demeanor and credibility of witnesses at trial, since the district court is so much better situated to evaluate these matters." *D'Anjou*, 16 F.3d at 614. Provided that there are two permissible ways to view the evidence, as there are here with respect to the veracity of Jones's testimony, "factual findings by the trial court . . . based on the credibility of witnesses . . . are virtually unreviewable." *United States v. Moore*, 242 F.3d 1080, 1081 (8th Cir. 2001) (internal quotation marks omitted). Jones has failed to point out any error, let alone a clear one, that would call for us to overturn the factual findings of the district court that support the obstruction of justice enhancement.

C.

Finally, Jones contends that the district court had no basis for imposing an "aggravating role" enhancement under U.S.S.G. § 3B1.1. A sentencing court must increase the offense level by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The Guidelines list seven factors for the court to

consider in determining whether defendant played an organizational or leadership role:

> the exercise of decision[-]making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4; *see United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002).

Jones argues that there was insufficient evidence of his decision-making authority to justify application of the enhancement, particularly in light of the fact that the jury found him not guilty of the conspiracy charge. Additionally, Jones reasons that if the jury concluded that he did not conspire with Gibson, Sneed or Barnes to distribute cocaine base, then there was no organization over which Jones could have asserted his leadership. We cannot agree.

The district court expressly considered the evidence in light of the seven factors referenced in U.S.S.G. § 3B1.1 and *Sayles*, and concluded that Jones was the organizer and leader of a narcotics distribution enterprise that involved as many as eight individuals. The record supports this conclusion and forecloses the possibility of clear error. Testimony at trial established that Jones maintained contact with drug suppliers and recruited people to work as dealers. Testimony further indicated that Jones controlled how the product was allocated to his dealers and how the money was ultimately divided. For example, the testimony of Darrell Barnes, if believed, established that Jones recruited Barnes by inquiring whether he was interested in making some cash for Barnes's young son. Jones arranged the details of Barnes's trips to Charleston to sell crack; Jones explained how the transaction would work and told Barnes that his goal was to move 200 ounces of crack at $2400 per ounce in a period of six months. Barnes was present when Jones discussed the drugs that another dealer, Diana Taylor, had been selling for him. According to Barnes, Jones typically obtained additional supplies of drugs on his own, and then

notified Barnes and other dealers who helped him package the drugs for sale. Barnes likewise identified Daniel Pruitt, Gene Butcher, and Derrick Geiger as dealers who worked for Jones at various times.

On this record, the imposition of the four-level enhancement for a leadership role in the offense was not clearly erroneous. The fact that Jones was not convicted for conspiracy does not serve as a *per se* bar to Jones's enhancement, contrary to what he seems to suggest. *See United States v. Fells*, 920 F.2d 1179, 1183 (4th Cir. 1990) (rejecting the proposition that a role enhancement under U.S.S.G. § 3B1.1 must be "narrowly based on the conduct or transaction(s) of which the defendant was convicted"); *United States v. Freeman*, 30 F.3d 1040, 1042 (8th Cir. 1994). Jones's "role determination is to be based, not solely on his role in the counts of conviction, but on his role in the entirety of his relevant conduct." *Fells*, 920 F.2d at 1184. In assessing a leadership role for Jones, the district court properly considered evidence encompassed within the whole of his relevant conduct. Finding no clear error, we affirm the district court's application of the aggravating role enhancement.

## V.   Conclusion

For the foregoing reasons, we affirm Jones's conviction and sentence.

*AFFIRMED*