UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

JAMES CURTIS HOOD,
      *Defendant-Appellant.*

No. 03-4873

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CR-03-227)

Submitted: April 23, 2004

Decided: May 4, 2004

Before WILKINSON and MOTZ, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

Frank W. Dunham, Jr., Federal Public Defender, Geremy C. Kamens, Nia Ayanna Vidal, Assistant Federal Public Defenders, Alexandria, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Patrick F. Stokes, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

James Curtis Hood pleaded guilty to being a felon in possession of a firearm. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2000). His guilty plea was conditioned upon his right to appeal the district court's denial of his suppression motion. The court sentenced Hood to twenty-seven months' imprisonment, to be followed by a three-year term of supervised release. Hood timely appeals. The sole issue on appeal is whether the district court clearly erred in its conclusion that Melissa Bennett, Hood's live-in girlfriend, voluntarily consented to the search of their apartment.*

On January 17, 2003, Bennett placed a 911 call to the Fairfax County Police Department, complaining of domestic abuse from Hood. When the first officer arrived on the scene, Bennett was outside of her apartment. She told the officer that Hood was inside the apartment, along with their two children, and had a gun. She stated that Hood had threatened her with the gun. Eventually, Hood came out of the apartment and was placed under arrest without incident. A second officer then entered the apartment to make sure that the children were safe and that the area was secure. This officer asked Bennett for her permission to search the apartment for the gun, which she gave. In fact, Bennett helped the officer search for the gun. When neither one of them found it, the officer asked Bennett's young son if he had seen where his father placed the weapon. The son indicated that Hood had put the gun in a closet. The officer asked Bennett for permission to search the closet, which she again gave. After opening the closet, the boy pointed to a lockbox inside. Bennett opened the box, which revealed the gun.

---

*Hood does not argue that Bennett lacked the authority to give her consent, but merely that she was coerced into consenting.

Hood moved to suppress the gun, contending that Bennett's search had been coerced. At the motion to suppress, the officer testified that he asked Bennett for permission to search and that she freely gave him this permission. He further testified that she never asked him to leave the apartment and that she aided in his search. Bennett, however, testified that she was never asked to give her consent and that she felt pressured by the presence of the officers to allow them to stay in the apartment. After hearing all of the evidence, the district court found the testimony of the officers to be more credible than Bennett's and denied Hood's motion to suppress, finding Bennett voluntarily consented to the search.

A search without a warrant is per se unreasonable absent the existence of a few narrow exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One of these exceptions is when authorized consent to the search is given. *Id.* "[A] search authorized by consent is wholly valid." *Id.* at 222. The Government bears the burden of proving by a preponderance of the evidence that consent was freely and voluntarily given. *Id.*; *United States v. Matlock*, 415 U.S. 164, 177 (1974). The voluntariness of consent is a question of fact to be determined by an examination of the totality of the circumstances. *Id.* at 233, 248-49; *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996).

In reviewing the denial of a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Jones*, 356 F.3d 529, 533 (4th Cir.), *cert. denied*, __ S. Ct. __, 2004 WL 264237 (2004). We review the facts in the light most favorable to the party that prevailed below. *Id.* When a district court bases its conclusion on oral testimony, the clearly erroneous standard is particularly strong because the court had the opportunity to observe the witnesses. *United States v. Lattimore*, 87 F.3d 647, 650-51 (4th Cir. 1996). "Thus, even when an appellate court is convinced that it would have reached an opposite conclusion had it been charged with making the factual determination . . . a reviewing court may not reverse the decision of the district court that consent was given voluntarily unless it can be said that the view of the evidence taken by the district court is implausible in light of the entire record." *Id.* at 651.

After reviewing the record, we cannot say that the district court's factual determination was clearly erroneous. Faced with two versions

of events, the district court found the officers' version more credible. We cannot say that this decision is implausible in light of the evidence presented. *See id.*

Accordingly, we affirm Hood's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

*AFFIRMED*