PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

WILLIE JAMES NEELY,
　　　　　　*Defendant-Appellant.*

No. 08-4257

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Frank D. Whitney, District Judge.
(3:06-cr-00197-FDW-1)

Argued: January 28, 2009

Decided: April 29, 2009

Before WILLIAMS, Chief Judge, and MOTZ and SHEDD,
Circuit Judges.

Reversed by published per curiam opinion.

## COUNSEL

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS
OF WESTERN NORTH CAROLINA, INC., Charlotte, North
Carolina, for Appellant. Adam Christopher Morris, OFFICE
OF THE UNITED STATES ATTORNEY, Charlotte, North
Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Exec-

utive Director, Kevin A. Tate, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

## OPINION

PER CURIAM:

Willie Neely entered a conditional guilty plea to one count of being a felon in possession of a firearm, in violation of 18 U.S.C.A. § 922(g)(1) (West 2000), and was sentenced to seventy-eight months of imprisonment and three years of supervised release. Neely now appeals the denial of his motion to suppress the firearm that served as the basis of that charge, arguing that the district court erred by concluding both that Neely consented to the search and, in the alternative, that the search was justified under *Terry v. Ohio*, 392 U.S. 1 (1968). For the following reasons, we reverse.

I.

On April 13, 2006 at 2:59 a.m., Charlotte-Mecklenburg Police Officer Dan Tran was on a routine patrol of The Plaza, a high crime area in Charlotte, North Carolina. After Tran saw a black Cadillac leaving The Plaza without its headlights on, Tran pulled the vehicle over for the violation. The driver, Willie Neely, was the only occupant of the vehicle. Tran asked Neely for his license and registration, which Neely readily provided. A check on Neely's license and registration revealed no problems, and Officer Tran returned to the vehicle, where Neely had remained in the driver's seat, to give Neely a verbal warning for failing to use his headlights. Officer Tran did not, however, return Neely's license or registration.

Tran testified that he was just about to let Neely go, but he first asked whether Neely had any "guns, weapons, grenades, bazookas [in the vehicle]." (J.A. at 133.) Neely replied "no," and then he asked whether Tran would like to "check" his trunk. (J.A. at 133.) Before Officer Tran responded, Neely began fumbling with the trunk switch. After about thirty seconds, Neely was still unable to open the trunk from his seat.

Although Neely had been cooperative, Tran asked Neely to exit the vehicle because he believed that thirty seconds was an unusual amount of time to locate and operate the trunk switch. When he was told to get out of the vehicle, Neely turned off the ignition, handed the keys to Tran, and got out of his car. Tran had immediately directed Neely to the back of the vehicle, and Neely complied, leaving his car door open. Arriving at the rear of the car, Tran held Neely's hands behind his back and performed a pat-down search of his person. Finding no weapons on Neely's body, Tran directed Neely to sit on the hood of the police car with another police officer. When Tran questioned Neely about why he was out so late, Neely responded that he was hungry and was going to the store to get some bread. Although Neely had already produced a valid vehicle registration, the other police officer asked Neely several questions about the vehicle's owner, the location of Neely's residence, and Neely's permission to use the vehicle.

While Neely was being questioned by the other officer, Tran began to search the interior of Neely's car, even though Neely had previously only offered for Tran to search the trunk. After briefly searching behind the driver's seat, Officer Tran moved to the back passenger area of the car where he found a firearm in the magazine pouch of the passenger side front seat. Tran never searched the trunk during this encounter with Neely. Officer Tran then left the gun and went to ask Neely to sit in the back of the police car. Neely asked why he was being placed in the car, and he eventually physically struggled with the officers and fled. Neely was apprehended at a later date.

A federal grand jury sitting in the Western District of North Carolina indicted Neely on two counts, both arising from his possession of the gun: one count of felon-in-possession, in violation of 18 U.S.C.A. § 922(g)(1) ("Count One"), and one count of possessing a firearm while under a domestic violence restraining order, in violation of § 922(g)(8) ("Count Two"). Neely filed a motion to suppress, alleging that Tran's search of the passenger compartment of his vehicle violated his Fourth Amendment rights. The district court denied the motion at a hearing on January 11, 2007.

On January 29, 2007, Neely entered into a plea agreement in which he agreed to enter a conditional plea of guilty to Count One, but he preserved the right to appeal the denial of his motion to suppress. On February 12, 2008, Neely was sentenced to seventy-eight months of imprisonment and three years of supervised release. Neely timely appealed, and we have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 2006).

## II.

On appeal, Neely argues that Tran's search exceeded the scope of his consent and that the search was not a valid protective search under *United States v. Holmes*, 376 F.3d 270 (4th Cir. 2004). In reviewing the denial of a motion to suppress, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Jones*, 356 F.3d 529 (4th Cir. 2004). We view the evidence in the light most favorable to the prevailing party below — here, the Government. *Id.*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "These rights are not second-class rights, but rather are among the rights held most sacred by the progenitors of the Bill of Rights and most

guarded by the common-law tradition." *United States v. McCoy*, 513 F.3d 405, 410 (4th Cir. 2008) (internal quotation marks and citations omitted). The Supreme Court has announced the general rule that a search or seizure without probable cause is unreasonable and, thus, unconstitutional. *See Kyllo v. United States*, 533 U.S. 27, 32 (2001) (noting that searches without probable cause are "presumptively unconstitutional"). This general rule, however, is "subject to certain exceptions," *Bringham City v. Stuart*, 547 U.S. 398 (2006), and "[w]e are to approach the Fourth Amendment . . . with at least some measure of pragmatism," *Mora v. City of Gaithersburg*, 519 F.3d 216, 222 (4th Cir. 2008).

## A.

We first consider Neely's argument that Officer Tran's search exceeded the scope of his consent. "Valid consent is a well-recognized exception to the Fourth Amendment prohibition against warrantless searches." *Trulock v. Freeh*, 275 F.3d 391, 401 (4th Cir. 2001). In cases where a defendant argues that law enforcement officers have exceeded the scope of a valid consent search, we employ the standard of objective reasonableness. The relevant question is "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

Of course, a "suspect may impose limits on the items in an area subject to the consent search." *United States v. Jones*, 356 F.3d at 534. "When an official search is properly authorized – whether by consent or by the issuance of a valid warrant – the scope of the search is limited by the terms of its authorization. Consent to search a garage would not implicitly authorize a search of an adjoining house." *Walter v. United States*, 447 U.S. 649, 656-57 (1980). By asking whether Officer Tran would like to "check" the trunk, Neely consented to a search of his trunk. (J.A. at 133.) The district court, however, found that when Neely handed over the keys to his car,

left the door to his vehicle open, failed to object to the search of the interior of his vehicle, and carried on a "relatively friendly" conversation with another police officer while the search was being carried out, he broadened the scope of his original consent, which had been expressly limited to the trunk of his vehicle, to include his entire vehicle. We disagree.

We begin by addressing the first two factors relied upon by the district court: Neely's decision to hand his keys to Officer Tran and leave the driver's door open after exiting the vehicle. While we acknowledge that non-verbal conduct can be sufficient to establish consent, *see, e.g., United States v. Hylton*, 349 F.3d 781, 786 (4th Cir. 2003), such conduct is still subject to *Jimeno*'s objective reasonableness standard. And, the Government's "burden is heavier where consent is not explicit, since consent is not lightly to be inferred." *United States v. Impink*, 728 F.2d 1228, 1232 (9th Cir. 1984) (internal quotation marks omitted). Here, Neely did not offer his keys in response to a law enforcement officer's request to search his car, an action which might reasonably be viewed as non-verbal consent. Nor did Neely offer his keys while asking Officer Tran whether he would like to search his vehicle. Instead, Neely surrendered his keys only *after* Officer Tran instructed him to get out of the vehicle. Neely had already verbally placed a limit on his consent to have his vehicle searched; surrendering his keys to Officer Tran after being ordered to get out of his car was consistent with his prior limitation because Tran would need the keys to open Neely's trunk. Likewise, Neely's decision to leave the driver's side door open is not indicative of non-verbal consent. Officer Tran directed Neely to the rear of his car immediately as he began exiting the vehicle; it is thus unsurprising that Neely did not refuse to follow Tran's directions simply so that he could close the door behind him. Given the facts presented here, we find that neither of these actions are sufficient to overcome his prior verbal limitation.

Likewise, Neely's failure to object, given the express limitation placed on the scope of his consent, does not bear the weight that the Government suggests. We have previously held that "a suspect's failure to object (or withdraw his consent) when an officer exceeds limits allegedly set by the suspect is a strong indicator that the search was within the proper bounds of the consent search." *Jones*, 356 F.3d at 534. This case, however, presents a far different factual scenario than *Jones*. In *Jones*, law enforcement officers were given verbal consent to search a duffel bag that contained a locked container and the keys to open the locked container. *Jones*, 356 F.3d at 533. The defendant in *Jones* told officers that "what you're looking for is in that bag" and responded "sure, go ahead" when the officers requested permission to search the bag. *Id.* at 532. The locked box at issue in that case was within the bag that the defendant gave officers permission to search. Because the item in question was physically within the location already consented to, it is reasonable for officers to believe that silence is an indication that they have not exceeded the boundaries of the defendant's original consent. *Jones* is thus inapposite to the specific circumstances presented here. The interior of Neely's car is not physically part of his trunk in the manner that the *Jones* lockbox was physically within the duffel bag and, thus, within the express scope of the consent search.*  *See, e.g., New York v. Belton*, 453 U.S. 454, 461 n.4 (1981)(distinguishing a trunk from containers found within the interior of a vehicle, such as glove compartments, consoles, and other receptacles). Because Neely's original consent did not physically encompass the interior of his vehicle, under the specific circumstances of this case, we do not find his silence sufficiently persuasive to overcome the limitation he originally placed on the search.

---

*We find unpersuasive Officer Tran's testimony that when Neely asked Tran whether he wanted to check the trunk, he believed that "[b]asically he gave me consent to search the car." (J.A. at 54.)

Finally, the fact that Neely continued speaking with an officer during the search is essentially meaningless. The videotape of the incident clearly provides that Neely merely responded to the officer's questioning; that decision has no bearing on the scope of his consent. Moreover, taking these factors together does not alter our conclusion. Neely's decision to give Officer Tran his keys and leave his car door open were the product of cooperation with a law enforcement officer, not an intentional indication of consent. Similarly, Neely's failure to object to a search carried out while he was being questioned by a second police officer is not the type of silence we found indicative of consent in *Jones*. Thus, Officer Tran's search of the interior of Neely's vehicle cannot be justified on the basis of consent.

### B.

As an alternative holding, the district court found the search of Neely's car was justified as a protective search. An officer may search the interior of a vehicle incident to a lawful traffic stop if he "possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that [a] suspect is dangerous and . . . may gain immediate control of weapons within the vehicle." *Holmes*, 376 F.3d at 276 (internal quotation marks omitted). Thus, our inquiry is whether (1) Officer Tran could have reasonably believed Neely was dangerous and, if so, (2) whether Officer Tran could have reasonably believed that Neely could have gained immediate control of weapons. We conclude that Officer Tran's search does not survive the first prong of the *Holmes* analysis because Tran could not have reasonably believed Neely was dangerous. *Holmes*, 376 F.3d at 277.

When Tran initially stopped Neely for a headlights violation, Neely produced a valid license and registration. There is no testimony that Neely was confrontational or threatening. Tran himself testified that when he returned to the vehicle and

asked whether Neely possessed any weapons, he "didn't suspect that [Neely] had anything in the vehicle at all." (J.A. at 106.) After Officer Tran asked Neely about whether he possessed any weapons, Neely smiled, replied "no", and asked Officer Tran whether he would like to "check" his trunk. (J.A. at 133.) When Tran assented, Neely fumbled with his trunk button for about 30 seconds, at which point Tran asked him to step out of the vehicle. The district court found that Neely was "very cooperative at this point." (J.A. at 137.) Neely submitted to a frisk and part of a field sobriety test. He then sat, as directed, on the hood of Officer Tran's vehicle and answered the questions posed to him by a second police officer. Tran testified that Neely was always free to withdraw his consent for the search, get his keys, and leave.

The district court found that Tran "had articulable suspicion" to perform the vehicle search because Neely was in a high crime area at 3:00 a.m. and "because of [Neely's] fumbling." (J.A. at 139.) Fumbling in a dark car in the middle of the night under the watchful eyes of two law enforcement officers for a trunk button does not, without more, create a reasonable suspicion that Neely was *dangerous*. And, we cannot say that sufficient "more" was present here. Although the district court notes the late hour, the high-crime area, Neely's stumbling out of the vehicle, and Officer Tran's suspicion that Neely was lying about his reasons for being out, this case does not present the type of facts found sufficient in *Holmes* or *United States v. Elston*, 479 F.3d 314 (4th Cir. 2007), to warrant a protective search. The defendant in *Holmes*, although cooperative during his search, was suspected to be a violent gang member with an outstanding arrest warrant. 376 F.3d at 277-78. Similarly, the officers in *Elston* possessed detailed information about the defendant due to a 911 call that identified the defendant as threatening to shoot someone in the near future. 479 F.3d at 318-19. By contrast, Officer Tran had no information that would lead him to believe that Neely either had committed violent crimes in his past or posed an immediate threat to the public. Neely's stumbling, his where-

abouts, the time of his encounter with Officer Tran, and Officer Tran's suspicion that Neely was not truthful regarding his motives for being out so late are relevant to whether a protective search was justified, but they are not dispositive. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that presence in an area of expected criminal activity is not dispositive, but one of many factors to be considered).

We acknowledge that this is a close case, and that several facts present here, under different circumstances, might counsel a different result. But Neely, unlike the defendants in *Holmes* and *Elston*, was not thought to be a member of a violent gang with an outstanding arrest warrant or an imminent violent threat based on a detailed 911 tip. There was no evidence or suggestion that Neely was armed. Moreover, Neely never hesitated or complained about following Tran's orders, never became belligerent, never threatened, intimidated, or in any way suggested that he intended harm. He was not overly nervous or evasive. These factors, combined with Officer Tran's testimony that Neely was free to leave at any time, render us unable to say that Neely's actions or past behavior allowed Officer Tran to reasonably believe Neely was dangerous. The simple discovery of a weapon cannot, of course, create reasonable suspicion after the fact. As such, we are unable to find that Tran's search of Neely's vehicle was justified under *Holmes*.

### III.

Because Officer Tran's search exceeded the scope of Neely's consent and cannot be justified under *Terry*, we find that the search of the interior of Neely's car was in violation of his Fourth Amendment rights. For the foregoing reasons, the judgment of the district court is

*REVERSED*.