**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

No. 24-4076

───────────────

UNITED STATES OF AMERICA,

          Plaintiff – Appellee,

   v.

JULIO CESAR ALVARADO DUBON,

          Defendant – Appellant.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. M. Hannah Lauck, District Judge. (3:22-cr-00121-MHL-1)

───────────────

Argued: March 21, 2025                        Decided: April 30, 2025

───────────────

Before KING, GREGORY, and HEYTENS, Circuit Judges.

───────────────

Affirmed by published opinion. Judge Heytens wrote the opinion, which Judge King and Judge Gregory joined.

───────────────

**ARGUED:** Jose E. Aponte, BAIN SHELDON, PLC, Richmond, Virginia, for Appellant. Stephen Eugene Anthony, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

───────────────

TOBY HEYTENS, Circuit Judge:

Julio Alvarado Dubon moved to suppress firearms and ammunition discovered during a warrantless search of his home. The district court denied the motion, concluding Alvarado Dubon voluntarily consented to the search and, even if he had not, the items were found during a valid protective sweep. We affirm based solely on the district court's consent finding and thus do not consider whether the officers could have conducted a protective sweep absent such consent.

I.

In July 2022, three officers knocked on the door of a house in Richmond, Virginia. The officers were looking for a man named Rolman Balcarcel, who a tipster said had "an AR-15 and other big weapons" and may have been planning to shoot up "schools, events, etc." JA 236–37. Alvarado Dubon answered the door and allowed the officers to enter the house's small front room.

Once inside, the officers saw a handgun magazine on a mantle. Another man (later identified as Balcarcel) soon entered the front room from a room further back in the house. An officer asked the men in Spanish whether they recognized Balcarcel's name and picture, but both said no. The Spanish-speaking officer also asked Alvarado Dubon if there were other people or any firearms in the house. Alvarado Dubon claimed no one else was in the home but "did not respond regarding whether firearms were in the residence." JA 241.

The Spanish-speaking officer then told Alvarado Dubon in Spanish that the officers were going to "check to see if there is anyone else here in the house." Alvarado Dubon responded in Spanish: "Go check, . . . there's no one else." As he spoke, Alvarado Dubon

2

"nodded and, with an upturned palm, gestured forward toward the rooms in the rear of the residence." JA 241. Another officer immediately left the front room to check the rest of the house.

A few seconds after the searching officer left the front room, Alvarado Dubon made the following statement in Spanish before trailing off and shrugging his shoulders: "Well, I understand you can't get into my house without a warrant, then. But . . ." The Spanish-speaking officer did not translate that statement to the other officers and instead replied in Spanish: "We are going to check that nobody's there." Less than 20 seconds after leaving the room, the searching officer returned and said he had found "the rifle." The officers seized two long rifles, a handgun, magazines, and other ammunition from the house.

A grand jury charged Alvarado Dubon with violating 18 U.S.C. § 922(g)(5). Alvarado Dubon moved to suppress all evidence obtained from the house. The district court denied that motion after an evidentiary hearing. Alvarado Dubon then entered a conditional guilty plea that preserved his ability to challenge the denial of his suppression motion. See Fed. R. Crim. P. 11(a)(2). The district court sentenced Alvarado Dubon to 16 months of imprisonment.

## II.

Alvarado Dubon does not challenge anything that happened until the searching officer left the front room. To be sure, the officers did not have a warrant, and Alvarado Dubon could have declined to let them inside the home. But "it is not a Fourth Amendment search to approach [a] home in order to speak with the occupant, *because all are invited to do that.*" *Florida v. Jardines*, 569 U.S. 1, 9 n.4 (2013). And once Alvarado Dubon "allowed

3

the officers into" his home, JA 239, the officers could enter without violating the Fourth Amendment. See *Fernandez v. California*, 571 U.S. 292, 298 (2014).

Still, consent is not an all-or-nothing matter and inviting a guest to come through the front door is not the same as giving them the run of the house. The government does not contend that Alvarado Dubon's initial invitation to enter extended past the initial room, so the officers needed some other basis for proceeding deeper into the home.

The district court identified two such grounds. To begin, it found that Alvarado Dubon consented to the additional intrusion and did not revoke that consent at any point before the rifle was found. The district court further concluded that, "even if consent to search had not been voluntarily given, the warrantless search of the bedrooms where the firearms were found would be justified as a protective sweep." JA 251. We conclude the district court's consent finding is not clearly erroneous and affirm its denial of Alvarado Dubon's suppression motion on that ground. See *United States v. Wilson*, 895 F.2d 168, 172 (4th Cir. 1990) ("In reviewing a district court's determination on consent, an appellate court must uphold the lower court's finding unless it is 'clearly erroneous.'"). We thus need not—and do not—decide whether the officers could have conducted a protective sweep absent Alvarado Dubon's consent.

Alvarado Dubon offers two challenges to the district court's consent finding. First, he says he never voluntarily consented to any officer proceeding beyond the front room. Second, Alvarado Dubon suggests that, even if he had consented, he withdrew any such consent before the rifle was found. We are not persuaded by either argument.

4

A.

The district court's finding that Alvarado Dubon "freely and voluntarily consented to the protective sweep of the residence" is not clearly erroneous. JA 245. As directed by the Supreme Court, the district court considered Alvarado Dubon's "actions, his age, and the conditions under which he gave consent." *Id.*; see *Schneckloth v. Bustamonte*, 412 U.S. 218, 226−27 (1973) (courts should consider "both the characteristics of the accused and the details of" the interaction). In doing so, the court interpreted Alvarado Dubon's statement, "Go check, . . . there's no one else" as "verbally consent[ing] to the search." JA 245. That consent "was bolstered by [Alvarado Dubon's] body language as he nodded and gestured towards the area to be searched with an upturned hand." *Id.*; see *United States v. Hylton*, 349 F.3d 781, 786 (4th Cir. 2003) ("Consent may be inferred from actions as well as words."). Those are precisely the sort of fact- and case-specific judgment calls for which we owe district courts maximum deference.

Alvarado Dubon's contrary arguments do not move the needle. True, the officers initially told him that they were "going to check to see if anyone else was in the residence" rather than asking permission to do so. JA 241. But those statements were made before Alvarado Dubon gave consent, and "the Government need not demonstrate that the defendant knew of his right to refuse consent to prove that the consent was voluntary." *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996) (en banc). And here the district court carefully explained why "the conditions under which [Alvarado] Dubon consented do not suggest he was operating under any coercion or duress," including that the officers "never displayed force" or "raised [their] voice during the interaction." JA 247.

5

Alvarado Dubon also argues that his inability to speak fluent English "amplified" the "concern regarding consent." Alvarado Dubon Br. 14. No doubt, language barriers may affect the voluntariness of consent. But the district court never suggested otherwise, and the facts here support the court's conclusion that—language barriers aside—Alvarado Dubon "freely and voluntarily consented to the search." JA 248. The Spanish-speaking officer told Alvarado Dubon in Spanish that they were going to see if anyone else was in the house, and Alvarado Dubon responded in Spanish that they should "[g]o check." The district court permissibly viewed that exchange as confirming that Alvarado Dubon understood the officers' intentions and consented to their proposed action.

## B.

The district court also permissibly concluded that Alvarado Dubon did not withdraw his consent before the rifle was found.

"A consent to search is not irrevocable, and thus if a person effectively revokes . . . consent prior to the time the search is completed, then the police may not thereafter search in reliance upon the earlier consent." *Lattimore*, 87 F.3d at 651 (quotation marks removed). But "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), and reasonable officers need not be mind readers. So just as "the scope of a suspect's [initial] consent" depends on how "the typical reasonable person [would] have understood . . . the exchange between the officer and the suspect," *Florida v. Jimeno*, 500 U.S. 248, 251 (1991), the same is true when a person asserts that any consent was later withdrawn.

Alvarado Dubon's revocation argument rests on his statement: "Well, I understand

6

you can't get into my house without a warrant, then. But . . ." The district court carefully considered that statement and explained why a reasonable officer would not have understood it to be a withdrawal of consent. The court explained that the words Alvarado Dubon used before trailing off and shrugging his shoulders are "readily" susceptible to different meanings and suggest that he could have "finish[ed] his comment by saying 'I'm allowing you to search anyway.'" JA 246; see *United States v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 820 (7th Cir. 2023) ("[P]olice officers do not act unreasonably by failing to halt their search every time a consenting suspect equivocates."). The court also noted that neither Alvarado Dubon's "affect" nor his "actions suggest he leaned toward withdrawing consent" because Alvarado Dubon neither "protested" the officers' actions nor "told the officers to stop or get out of his home." JA 246; see *United States v. Jones*, 356 F.3d 529, 534 (4th Cir. 2004) (stating that "a suspect's failure to object (or withdraw his consent) when an officer exceeds limits allegedly set by the suspect is a strong indicator that the search was within the proper bounds of the consent search"). And although Alvarado Dubon asserts that the officers "seemingly ignored" his statement about the need for a warrant, Alvarado Dubon Br. 14, the officers did not have to tell Alvarado Dubon that he had the right to revoke his consent to the search. See *United States v. Mendenhall*, 446 U.S. 544, 558 (1980) ("[T]he Constitution does not require proof of knowledge of a right to refuse as the *sine qua non* of an effective consent to a search." (quotation marks removed)). The district court thus did not err in concluding that Alvarado Dubon did not revoke his consent before the rifle was found.

\*     \*     \*

7

The judgment is

*AFFIRMED*.