## 18742

The STATE, Respondent, v. Edward RICHBURG, Appellant

(158 S. E. (2d) 769)

*Messrs. Matthew J. Perry,* of Columbia, and *W. Newton Pough* and *Zack E. Townsend,* of Orangeburg, and *Jenkins, Perry & Pride,* of Columbia, *of Counsel, for Appellant,*

454

*Messrs. Julian S. Wolfe, Solicitor,* of Orangeburg, and *Daniel R. McLeod, Attorney General,* and *J. C. Coleman, Assistant Attorney General,* of Columbia, *for Respondent,*

January 3, 1968.

LITTLEJOHN, Justice.

The appellant, Edward Richburg, was convicted by a jury of the murder (without recommendation to mercy) of Orangeburg County Deputy Sheriff J. Leroy Myers and was sentenced to death. The killing occurred after the deputy gave motor-vehicular chase to the appellant because of an alleged traffic violation when the two came to a stop in front of the "Crazy Baby", a place of business operated by the appellant. There was an exchange of gun fire; the appellant was wounded and the deputy was killed.

It is the contention of the State that the deputy was making a lawful arrest for a traffic violation committed in his presence, that the appellant refused to cooperate, went to his home nearby, procured a pistol, came back and maliciously killed the deputy.

It is the contention of the appellant that he did not have money to pay a fine and/or bond and offered to go to the judge with the deputy. He further contends that the deputy used unnecessary force to make the arrest by pushing and shoving, and "snatched out his gun and I fell back and he shot me through the head * * *." Appellant asserts that he thereupon went into his store building, got his pistol, came back outside the building, and after pleading with the deputy not to shoot him again, shot the officer in self-defense.

The case is before us on appeal as a result of twenty exceptions appearing in the transcript of record; however, we think that the eight questions set forth in appellant's brief fairly state the issues for determination by this court. They are quoted from the brief as follows:

"1. Whether the Court erred in receiving as evidence State's Exhibit No. 5 and of permitting the State to examine it's witnesses concerning the contents of same [This exhibit is a written statement previously given by State's witness Thomas Lee Johnson.]

"2. Whether the Court erred in refusing to hold that, on the evidence presented, Appellant shot the deceased in self-defense.

"3. Whether the Court erred in receiving as evidence, State's Exhibit No. 17, a pistol belonging to Appellant.

"4. Whether the Court erred in refusing to quash the indictment and the array of petit jurors in accordance with Appellant's Motions, made upon the ground that women were excluded by law from service upon said Grand and Petit Juries.

"5. Whether the Court erred in refusing to hold that Negroes were systematically excluded from the Grand and Petit Juries.

"6. Whether the Court erred in refusing to change the Venue from Orangeburg County.

"7. Whether the Court erred in refusing to excuse the Juror David Garrett, for cause.

"8. Whether the Court erred in refusing to excuse the Juror L. A. Boyleston, for cause."

Since a new trial must be held it would serve no purpose to determine if jurors Garret and Boyleston should have been excused for cause (questions 7 and 8) because these jurors, even if by chance drawn again, would not be permitted to serve.

The State's exhibit 5 referred to in question 1 is a written statement allegedly given by State's witness Thomas Lee Johnson soon after the killing. This case had been tried previously, resulting in a mistrial because the jury was unable to agree on a verdict. Johnson was not called by either side as a witness in the first trial.

This witness was at the scene of the killing at the "Crazy Baby" on the night of June 4, 1965. When he was called to the witness stand by the State he immediately began to deny pertinent knowledge of the shooting, whereupon the solicitor claimed surprise and after considerable testimony was taken in the absence of the jury, the trial judge declared the wit-

ness hostile and allowed the solicitor to cross examine his own witness in the presence of the jury by reading to him substantially all of the statement, sentence by sentence, and asking him if he had made that statement. He denied having made all or substantially all of the statements read to him. At the same time he admitted having affixed his signature to the instrument.

Other witnesses for the State testified as to the voluntariness of the written statement and as to the witness' apparent understanding of the same.

Appellant's counsel made timely objection to the solicitor's impeaching his own witness, and to introduction of the written statement as an exhibit.

It is the contention of counsel for the appellant that, except for the statements of this witness as contained in the instrument, there is no evidence of aggression on the part of the appellant and it is argued that the same was accordingly prejudicial.

The oral testimony of Johnson in court would, if believed, indicate that he knew nothing relevant about the real issues in this case.

■ Assuming, without deciding, that the State adequately showed surprise by the testimony (or rather lack of it) of witness Johnson, we are of the opinion that no evidence had been given which was detrimental to the State's case at the time of the claimed surprise. A fair summary of what the witness stated was that he did not know anything of real importance about the shooting. This is not like the case wherein a witness, to the surprise of counsel who called him, gives adverse and damaging testimony. In such case counsel may be permitted to cross examine his own witness for the purpose of curing the damage into which he was trapped. When the extent of the surprise is that a witness does not testify to what counsel has been led to believe him to know, the alleged detriment (if in fact there be any) can be rectified by merely withdrawing the witness,

The general rule is stated in 58 American Jurisprudence 445, Witnesses, Paragraph 799:

"Even where there is a real surprise it is not proper to permit the impeaching testimony to go beyond the only purpose for which it is admissible—the removal of the damage the surprise has caused."

And in Paragraph 800:

"Where the testimony of a witness is not prejudicial to the party calling him, the credibility of the witness is immaterial and no reason exists for impeaching him. It is not sufficient that the witness merely fails to testify to a material fact, fails to give testimony favorable to the party producing him, gives no testimony adverse to him, gives irrelevant testimony, or denies that he has any knowledge of the matter involved, * * *

* * *

"In a criminal prosecution, the attorney for the state may not examine a witness for the prosecution as to prior inconsistent statements where such witness gives no testimony prejudicial to the state, as where he merely denies knowledge of the facts."

In the case of *State v. Nelson,* 192 S. C. 422, 7 S. E. (2d) 72, this court said:

"Evidence of contradictory statements is theoretically evidence affecting credibility only, and is not substantive evidence of the facts embraced in the contradictory statements; but, nevertheless, evidence of inconsistent statements does often influence the jury, and, because of this, a party should not be allowed to interrogate his own witness in respect to previous inconsistent statements unless he has actually suffered surprise or entrapment."

Included in the statement read to the jury is the following:

"When the shooting started, Mr. Myers was backing up, Mr. Richburg followed up to the trash can, both shooting, that is when I turned and ran in the place."

On the stand he denied that he said this. We are of the opinion that State's counsel should not have been permitted

to cross examine witness Johnson under all of the facts shown by the record, and the same was prejudicial, such as to require a new trial.

Appellant contends by question 2 that the trial judge should have directed a verdict, as a matter of law, of not guilty in favor of the defendant on the plea of self-defense. When the evidence is susceptible of more than one reasonable inference, questions of fact must be submitted to the jury. We think jury issues were made by the whole of the evidence. Among other considerations is the credibility of the witnesses, including that of the appellant himself. When there is reason to discredit a witness because of interest or otherwise the judge is not required to take the case from the jury as a matter of law but may and should submit the issues, including credibility of the witnesses, to the jury. We find no error, even after disregarding the statement of witness Johnson referred to above, in submitting the case to the jury. In *State v. Brown,* 205 S. C. 514, 32 S. E. (2d) 825, we said:

"In *Thompson v. Bearden,* 200 S. C. 519, 21 S. E. (2d) 189 and *Green v. Greenville County,* 176 S. C. 433, 180 S. E. 471, 473, we quoted with approval the following excerpt from 26 R. C. L., Page 1069:

'* * * The fact that evidence is not contradicted by direct evidence does not render it undisputed, as there still remains the question of its inherent probability and the credibility of the witness or his interest in the result. To justify a Court in instructing a jury that a witness has told the truth, and in directing a verdict based on the truthfulness of his evidence, there must be nothing in the circumstances or surroundings tending to impeach the witness or to throw discredit on his statements. If there is anything tending to create distrust in his truthfulness, the question must be left to the jury.' "

We do not think the judge would have been justified in telling the jury that reasonable men could not disagree as to the truthfulness of appellant's version

of the killing. On the issue of self-defense the burden of proof was of course on the appellant.

Appellant urges that the trial court erred in refusing motion to quash the indictment because women were excluded from the grand and petit juries. Since the trial of this case the constitution of this State has been amended such that women now serve as jurors. Accordingly, on a new trial the issue cannot likely arise as relates to the petit jury. However, inasmuch as the next trial may (or may not) go forward under the same indictment, we deem it advisable to rule on the issue as relates to the composition of the grand jury at the time the true bill was returned to the court. If a new indictment is procured, the issue will, of course, become moot.

Counsel for appellant cites no case from this court or from the Supreme Court of the United States to substantiate his position. On the other hand, this court has held to the contrary: "Exclusion of women from service on the petit jury, required by Article V, Section 22 of the Constitution of this State does not violate the Fourteenth Amendment of the Constitution of the United States." *State v. Hollman,* 232 S. C. 489, 102 S. E. (2d) 873. Also, see *Williams v. State of South Carolina,* 237 F. Supp. 360 (D. C. S. C. 1965), and 31 Am. Jur. 90, Jury, Paragraph 101.

Appellant argues that the trial court erred in refusing to hold that Negroes were systematically excluded from the grand and petit juries. Eight Negroes served on the grand jury of eighteen members which indicted the appellant; six Negroes were on the petit jury panel from which the trial jury was drawn; the State exercised five peremptory challenges and excused five of the six Negroes drawn; and one Negro served on the petit jury which wrote the verdict. The issue may not arise again on new trial, except as might relate to the composition of the grand jury, and then only in case the trial goes forward on the same indictment. A review of the entire record fails to show any systematic exclusion of Negroes from the grand jury and the trial judge correctly refused to quash the indictment.

At the next trial a new jury panel will of course be called. The State will use its challenges as it be ad- vised at that time. It would serve no purpose to discuss at length the composition of the last petit jury or the challenges used by the State. However, Section 38-211 of the South Carolina Code of Laws for 1962 gives to the State five and to the defendant ten peremptory challenges. These may be used for any cause satisfactory to counsel or for no cause and it is not the province of the trial judge or this court to interfere.

The evidence reveals that the wife of the appellant was taken into custody after the killing. Some seven or eight hours later, in the early morning of the next day, she went in the custody of law enforcement officers to her home and that of the appellant, and gave them the pistol used by the appellant. No search warrant for the house had been issued. Appellant submits that the wife, while under arrest, was coerced into delivering the pistol and argues that the weapon should not have been admitted in evidence (as exhibit 17). It is the contention of the State that she freely and voluntarily obtained the pistol from their house and turned it over to the law enforcement officers.

By admitting the pistol in evidence as an exhibit it can be forcefully argued that the trial judge found as a matter of fact, at least by implication, that the gun was legally obtained, and further found as a fact that the wife freely delivered the pistol. See *State v. Morris,* 243 S. C. 225, 133 S. E. (2d) 744.

The courts have heretofore, in *habeas corpus* and other post-trial proceedings, emphasized the need for specific findings of fact when the legality of the fruit of a search and seizure is raised. If one is entitled to such a finding of fact in those proceedings, we think it logical to make such specific findings within the trial itself such that the same may be subject to appeal and review in the conventional fashion. If it be found by the judge as a matter of fact that the weapon was procured by coercion or

other unlawful means the same would be inadmissible under the recent search and seizure cases. In the light of the fact that the appellant elected to take the witness stand and admitted the shooting and pled self-defense, we doubt that the introduction of the evidence was prejudicial; however, at the time the pistol was admitted into evidence the court had no way of knowing what the defense would be, and at the next trial the defendant may or may not take the witness stand and may or may not plead self-defense.

At the appropriate time appellant moved for a change of venue from Orangeburg County upon the ground that appellant could not receive a fair trial. Such motion is, under our cases, addressed to the sound discretion of the trial judge. *State v. Byrd,* 229 S. C. 593, 93 S. E. (2d) 900; *State v. Whitener,* 228 S. C. 244, 89 S. E. (2d) 701; *State v. Livingston,* 233 S. C. 400, 105 S. E. (2d) 73, and *State v. Mouzon,* 231 S. C. 655, 99 S. E. (2d) 672. We have reviewed the entire record, and note in addition the extensive questioning of jurors on *voir dire,* and conclude that error has not been shown.

Let the case be remanded for a new trial and the lower court is

Reversed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.