741 S.E.2d 590

**The STATE, Respondent,**

v.

**Roger BRUCE, Appellant.**

**Appellate Case No.2011–197635.**

**No. 5110.**

Court of Appeals of South Carolina.

Heard Jan. 9, 2013.
Decided April 3, 2013.
Rehearing Denied May 6, 2013.

Appellate Defender Robert M. Pachak, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Brendan J. McDonald, all of Columbia, for Respondent.

FEW, C.J.

Roger Bruce was convicted of murdering his girlfriend Laura Creel. On appeal, he argues the trial court erred in admitting evidence of the discovery of Creel's body, which police found in the trunk of her car, because he claims the search violated his Fourth Amendment rights. In ruling on the issue at trial, the court did not make adequate factual findings or legal conclusions. Rather, the court summarily stated, "I'm going to overrule the objection and allow it." We hold the trial court's findings are inadequate for appellate review. We remand to the trial court to determine (1) whether Bruce had a legitimate expectation of privacy in the trunk of Creel's car, (2) whether Bruce consented to the search, and (3) if the police violated Bruce's Fourth Amendment rights, whether the exclusionary rule applies.

## I. Facts and Procedural History

Late in the evening on October 12, 2009, Creel's son contacted the Florence police department, requesting the police check on Creel at the apartment she shared with Bruce. He told the police he had not heard from her or seen her in "a couple of days." He also informed them that Creel's "goldish" 1997 Chrysler Concord was parked at the apartment and that Bruce had called him from Creel's cell phone.

As officers Gary Beckett, Charles Hobgood, and Steven Starling approached the apartment on foot, they saw Bruce looking out of the apartment's screen door. The officers explained to Bruce they were there to check on Creel and asked if she was home. When Bruce answered no, the officers asked if they could "take a quick look and make sure that she wasn't inside," and he consented. After briefly scanning the residence, the officers observed a cell phone and keys on a table. The keys were consistent with the vehicle parked outside the apartment, and the vehicle was consistent with the description given by Creel's son. Bruce stated the keys and cell phone belonged to Creel, which prompted Hobgood to pick up the keys and walk toward her car, along with the other officers and Bruce.

Hobgood looked through the car windows with his flashlight, searching for "maybe a pocketbook" or "something that may give us an idea where she may be." Hobgood then attempted to open the trunk but was unsuccessful. Hobgood testified Bruce asked, "well, you want me to show you what key[?]"[1] At that point, Bruce "walked towards" Hobgood "with his arm out like he was going to grab the keys," causing Hobgood to instruct Bruce to tell him which key opened the trunk rather than show him. Hobgood testified he was not sure what Bruce's intent was when he walked toward him. However, both Beckett and Starling testified it appeared Bruce walked toward Hobgood with the intent to help him find the correct key. During Hobgood's exchange with Bruce, Starling "got the keys from Hobgood" and pushed the trunk release button, which opened the trunk and revealed a female body, later identified to be Creel.

---

1. There is conflicting testimony as to whether Hobgood asked Bruce which key opened the trunk or whether Bruce volunteered his help.

At trial, Bruce moved to suppress the discovery of the body, arguing the search violated his Fourth Amendment rights because the officers had no search warrant and he had not consented to the search of the car. The court asked, "What standing would he have to object to a search of a vehicle that was not his?" Counsel responded Bruce could make the challenge based on the fact that the car was on his property and the keys were found inside his apartment. The State argued that Bruce had no expectation of privacy in Creel's car, and that he consented to the search and even offered to help the officers open the trunk.

After the court heard counsels' arguments, it stated,

It appears that this is inevitable discovery; but for hitting the trunk release button and opening the trunk according to the earlier testimony Mr. Bruce was gonna open the trunk for them, or at least was providing the keys to do so.

The court then ruled, "I'm going to overrule the objection and allow it." The jury found Bruce guilty and the court imposed a life sentence.

## II. The Sufficiency of the Court's Fourth Amendment Ruling

██ When a criminal defendant moves to suppress evidence on Fourth Amendment grounds, the trial court must first determine whether the defendant has a legitimate expectation of privacy in the searched premises. *See State v. Crane*, 296 S.C. 336, 341, 372 S.E.2d 587, 589 (1988) ("Because appellant cannot make the threshold demonstration of a legitimate expectation of privacy in connection with the searched premises, he is not entitled to launch the constitutional challenge to the search."); *State v. McKnight*, 291 S.C. 110, 114–15, 352 S.E.2d 471, 473 (1987) (stating a defendant who seeks to have evidence suppressed on Fourth Amendment grounds "must establish that his *own* Fourth Amendment rights were violated" by "demonstrat[ing] a legitimate expectation of privacy in connection with the searched premises"). If the trial court finds the defendant had a legitimate expectation of privacy, it must then determine whether the police violated *his* Fourth Amendment rights. *See, e.g., State v. Missouri*, 361 S.C. 107, 115, 603 S.E.2d 594, 598 (2004) (holding defendant had a legitimate expectation of privacy, which entitled him to chal-

lenge the search under the Fourth Amendment); *State v. Rivera*, 384 S.C. 356, 361, 682 S.E.2d 307, 310 (Ct.App.2009) (" 'Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent.' " (quoting *Palacio v. State*, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999))). If the trial court finds the police violated the defendant's own Fourth Amendment rights, it must then determine whether the evidence should be excluded pursuant to the exclusionary rule. *See State v. Weston*, 329 S.C. 287, 293, 494 S.E.2d 801, 804 (1997) (stating "[s]uppression is appropriate in only a few situations"); *State v. Sachs*, 264 S.C. 541, 566, 216 S.E.2d 501, 514 (1975) (stating "[t]he exclusionary rule is harsh medicine," and "[e]xclusion should be applied only where [the purpose of] deterrence is clearly subserved").

■ Whether a defendant may challenge a search, whether the police violated a defendant's Fourth Amendment rights, and whether to apply the exclusionary rule are mixed questions of law and fact. *See United States v. Gray*, 491 F.3d 138, 145 (4th Cir.2007) (stating "the expectation [of privacy] must be one which the law recognizes as legitimate," meaning it "must be objectively reasonable ... by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society" (internal quotations and citation omitted)); *State v. Austin*, 306 S.C. 9, 17, 19, 409 S.E.2d 811, 816, 817 (Ct.App.1991) (stating whether a legitimate expectation of privacy exists "depends on a factual determination" and "is a question of fact"); *State v. Tindall*, 388 S.C. 518, 523 n. 5, 698 S.E.2d 203, 206 n. 5 (2010) (stating that when addressing a challenge under the Fourth Amendment, an appellate court "must ask first, whether the record supports the trial court's [factual] findings ... and second, whether these facts support a finding that the officer" did not violate the defendant's Fourth Amendment rights); *United States v. Allen*, 159 F.3d 832, 838 (4th Cir.1998) (explaining "mixed questions of law and fact are involved" in an inevitable discovery ruling). Unless the trial court makes sufficiently specific factual findings on the record, this court has no basis on which to review those findings or the trial court's legal conclusions. *See generally State v. Blackwell–Selim*, 392 S.C. 1, 4, 707 S.E.2d 426, 428 (2011) (holding because the trial court

failed to make specific findings of fact to support its ruling, "there was nothing for the Court of Appeals to review").

■ In admitting the evidence of the discovery of Creel's body, the trial court stated, "It appears that this is inevitable discovery." The court's statement suggests it admitted the evidence under the inevitable discovery doctrine, which is an exception to the exclusionary rule. *State v. Jenkins,* 398 S.C. 215, 227, 727 S.E.2d 761, 767 (Ct.App.2012). However, a trial court has no need to consider whether the exclusionary rule applies until it has first determined the police violated the defendant's Fourth Amendment rights. The record does not indicate the trial court ever made that determination.

Moreover, this does not appear to be a situation in which the inevitable discovery doctrine is properly applied. *See State v. Spears,* 393 S.C. 466, 482, 713 S.E.2d 324, 332 (Ct.App. 2011) (stating evidence may be admitted despite a violation of the Fourth Amendment "if the government can prove that the evidence would have been obtained *inevitably*" (emphasis added) (quoting *Nix v. Williams,* 467 U.S. 431, 447, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377, 389 (1984))). In this case, the State presented no evidence that it would have inevitably discovered Creel's body by some other means had the officers not searched the trunk of her car as they did. Therefore, because the record contains no evidence to support the trial court's statement regarding inevitable discovery and inadequate findings as to the requirements of the doctrine, we may not affirm on that basis. *See Jenkins,* 398 S.C. at 230, 727 S.E.2d at 769 (remanding issue of whether inevitable discovery doctrine applied because State did not present evidence in support of the doctrine and the determination "should not be made by this court on a blank record").

We remand with instructions that the trial court make findings consistent with this opinion. *See Austin,* 306 S.C. at 19, 409 S.E.2d at 817 (remanding for determination of whether the defendant "had a reasonable expectation of privacy" because trial court failed to make that determination when it admitted evidence pursuant to an exception to the exclusionary rule); *State v. Richburg,* 250 S.C. 451, 461, 158 S.E.2d 769, 773 (1968) (emphasizing the need for specific findings of fact when the legality of a search or seizure is raised); *Jenkins,*

398 S.C. at 230–31, 727 S.E.2d at 769 (remanding issue of whether inevitable discovery doctrine applied). If the court determines Bruce had a legitimate expectation of privacy in the trunk of Creel's car, the police violated Bruce's Fourth Amendment rights by exceeding the scope of his consent, and the evidence should have been suppressed pursuant to the exclusionary rule, the court shall consider whether the error in admitting the evidence was harmless. If the court determines it erred and the error was not harmless, it shall grant a new trial. If the court determines it did not err in admitting the evidence, or the error was harmless, Bruce's conviction must be affirmed.

**REMANDED.**

WILLIAMS and PIEPER, JJ., concur.