# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent/Petitioner,

v.

Roger Bruce, Petitioner/Respondent.

Appellate Case No. 2013-001208

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Florence County
The Honorable Thomas A. Russo, Circuit Court Judge

---

Opinion No. 27525
Heard February 4, 2015 – Filed May 27, 2015

---

## REVERSED

---

Appellate Defender Robert M. Pachak, of Columbia, for Petitioner/Respondent.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Brendan J. McDonald, all of Columbia and Solicitor Edgar Lewis Clements, III, of Florence, for Respondent/Petitioner.

---

**JUSTICE HEARN:** Roger Bruce was convicted of murder for the death of his girlfriend, Laura Creel. On appeal, Bruce argued evidence offered at trial relating to the discovery of Creel's body was obtained in violation of his Fourth Amendment rights. The court of appeals found the record was incomplete for appellate review and remanded. *State v. Bruce*, 402 S.C. 621, 741 S.E.2d 590 (Ct. App. 2013). We granted both parties' petitions for certiorari. We now reverse the court of appeals' opinion and affirm his conviction.

## FACTUAL/PROCEDURAL BACKGROUND

Bruce and Creel were in a romantic relationship and lived together. One evening, Bruce called Creel's son, Shane Ritch, to ask whether he had spoken with Creel. Bruce told Ritch he had not seen her in a couple of days and did not know where she was. Bruce also informed Ritch that Creel's car was still parked outside of their garage apartment. Ritch was concerned because Creel never went anywhere without her car, her phone, and her dog. He immediately called his brother who told him they needed to figure out what happened. Ritch then called the police.

Ritch told the police that neither he nor Bruce had seen Creel in a few days and requested they check on her. He told the police what type of vehicle she drove and that she had left her car, phone, and dog at the house she shared with Bruce, which was uncharacteristic.

Officer Beckett, Officer Starling, and Corporal Hobgood responded to the call. Upon arrival, the officers informed Bruce they were there on a welfare check for Creel and asked if she was inside. Bruce said she was not, and the officers requested permission to look around for her inside. Bruce allowed them inside, and the officers did a quick scan of the rooms. Not finding anything, the officers began to question Bruce, who told them Creel had left after the two argued.

During the conversation, the officers noticed a cell phone and car keys on a table nearby. Bruce informed the officers they both belonged to Creel and Hobgood picked up the keys and went outside to the vehicle. Hobgood looked through the windows into the interior of the car and then attempted to open the trunk, but it would not open. He then asked Bruce which key opened the trunk and Bruce moved toward Hobgood as if to grab the keys. Hobgood pulled the keys back, and Starling pressed the trunk release button. Inside the trunk, the officers discovered Creel's body.

Bruce was subsequently charged with murder and the case proceeded to trial. During the course of Beckett's testimony regarding how the police found Creel's body in the trunk, Bruce objected "to the discovery of the body in this fashion" on the basis that there was no consent and no search warrant was obtained. When the trial court asked what basis Bruce had to object, he responded that it was on his property and the keys were in his house. The solicitor argued it was Creel's car and Bruce therefore had no expectation of privacy. He further claimed Hobgood had testified the previous day that Bruce offered to open the trunk for them. Ultimately, the court denied the motion stating, "[i]t appears that this is inevitable discovery; but/for hitting the release button and opening the trunk according to the earlier testimony Mr. Bruce was gonna [sic] open the trunk for them, or at least was providing the keys to do so."

Bruce was convicted and sentenced to life imprisonment. On appeal, Bruce argued the trial court erred in denying the motion to suppress because Bruce never consented to the officers taking the keys from his home. The court of appeals reversed, finding the record was insufficient for appellate review and remanding with instructions:

> If the court determines Bruce had a legitimate expectation of privacy in the trunk of Creel's car, the police violated Bruce's Fourth Amendment rights by exceeding the scope of his consent, and the evidence should have been suppressed pursuant to the exclusionary rule, the court shall consider whether the error in admitting the evidence was harmless. If the court determines it erred and the error was not harmless, it shall grant a new trial. If the court determines it did not err in admitting the evidence, or the error was harmless, Bruce's conviction must be affirmed.

*Bruce*, 402 S.C. at 627, 741 S.E.2d at 593. Both the State and Bruce petitioned for certiorari and the Court granted both petitions.[1]

---

[1] We decide this case with regard to the issue raised in the State's petition and dismiss Bruce's petition for certiorari as improvidently granted.

## ISSUE PRESENTED

Did the court of appeals err in failing to affirm the trial court's denial of the motion to suppress?

## STANDARD OF REVIEW

"A ruling on the admissibility of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Mercer*, 381 S.C. 149, 160, 672 S.E.2d 556, 561 (2009). On review of a Fourth Amendment search and seizure case, an appellate court must affirm if there is any evidence to support the ruling and will reverse only when there is clear error. *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011).

## LAW/ANALYSIS

Prior to addressing the legal issue before the Court, we correct the error of the court of appeals' mandate. The court of appeals held the trial court did not provide sufficient findings for appellate review and remanded for consideration of whether Bruce had an expectation of privacy in the trunk of Creel's car and the scope of his consent. The court of appeals further instructed the trial court that if it found the introduction of the evidence was in error, it "shall consider whether the error in admitting the evidence was harmless." *Bruce*, 402 S.C. at 627, 741 S.E.2d at 593. As both parties agree, it is clearly improper for the trial court to perform a harmless error analysis on its own evidentiary ruling. Trial courts cannot sit in judgment of their own rulings and proceedings. *See Floyd v. State*, 303 S.C. 298, 299, 400 S.E.2d 145, 146 (1991) (adopting, as a matter of policy, a per se rule of recusal that a judge who presided over a defendant's criminal trial cannot preside over a subsequent post-conviction relief proceeding). Furthermore, the harmless error analysis is an appellate doctrine arising from the principle that "appellate courts will not set aside judgments due to insubstantial errors not affecting the result." *Way v. State*, 410 S.C. 377, 384, 764 S.E.2d 701, 705 (2014). The court of appeals cannot relinquish its responsibility to make this fundamental determination in reviewing an appeal from a criminal conviction.

Turning now to the merits, Bruce argues the police violated his Fourth Amendment rights by removing the car keys that were in his home without his

consent.[2]  We disagree and find the officers' seizure of Creel's car keys from inside Bruce's home was reasonably encompassed within his consent to enter the home and search for Creel.[3]

The Fourth Amendment to the United States Constitution protects a person's right to be free from unreasonable searches and seizures.  U.S. Const. amend. IV.  "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed[ and a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  Searches and seizures without a warrant are per se unreasonable absent a recognized exception.  *Wright*, 391 S.C. at 442, 706 S.E.2d at 327.  The State bears the burden to demonstrate that it was entitled to conduct the search or seizure under an exception to the Fourth Amendment's warrant requirement.  *State v. Gamble,* 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013).  It is well-settled that one of the "established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

The State contends the officers had consent to seize the keys because they were given permission by Bruce to perform a welfare check.  We agree.  Bruce was aware that the officers were seeking to determine Creel's whereabouts when they requested entry to his home.  It is undisputed that Bruce then allowed them in his home.  A reasonable person would have understood that this search may extend to looking in her car, which was parked just outside, for any additional insight into where she may have gone or what could have happened to her.  Furthermore, our

---

[2] Bruce also alleges the search of the trunk of Creel's car was unreasonable and violated his Fourth Amendment rights.  However, Bruce only argued to the court of appeals about the seizure of the car keys; we therefore find any challenge to the subsequent search of the trunk unpreserved.  *City of Columbia v. Ervin*, 330 S.C. 516, 520, 500 S.E.2d 483, 485 (1998) (holding an issue not raised by exception to an intermediate appellate court cannot be raised in a subsequent appeal).

[3] Given our determination that the officers did not violate Bruce's Fourth Amendment rights, we find it unnecessary to address the State's contention that the evidence would have been inevitably discovered.

conclusion that the officers acted within the scope of Bruce's consent is supported by Bruce's failure to stop this alleged violation of his constitutional rights. *United States v. Jones*, 356 F.3d 529, 534 (4th Cir. 2004) ("[A] suspect's failure to object (or withdraw his consent) when an officer exceeds limits allegedly set by the suspect is a strong indicator that the search was within the proper bounds of the consent search."). When Hobgood picked up the car keys and walked outside, Bruce did not object but simply accompanied the officers out to the car. We accordingly find no violation of Bruce's Fourth Amendment rights.

## CONCLUSION

Based on the foregoing, we find the trial court did not err in denying Bruce's motion to suppress. We therefore reverse the court of appeals and affirm Bruce's conviction.

**TOAL, C.J. and KITTREDGE, J., concur. BEATTY, J., concurring in result only. PLEICONES, J., concurring in part and dissenting in part in a separate opinion.**

**JUSTICE PLEICONES:** I concur in part and dissent in part. I agree with the majority that the Court of Appeals' mandate was improper. I dissent, however, from the majority's decision on the merits of the suppression ruling itself, and would reverse the trial court's denial of that motion. Accordingly, I would reverse petitioner-respondent's (Bruce) murder conviction and sentence and remand for a new trial. In order to explain my decision, I find it necessary to review, in detail, both the trial record, the issue on direct appeal, and the petitions for rehearing in the Court of Appeals.

The critical issue, in my view, is the scope of Bruce's consent to search, and I begin with a review of the actual words spoken. An officer testified that "[w]e first asked [Bruce] if we could come inside and take a quick look and make sure that [the victim] wasn't inside, and he gave us permission to come in and take a look." The officer testified the searchers observed car keys "consistent to the [victim's] vehicle outside" and a cell phone on a table, and that another officer "picked up the car keys and went out to the vehicle" with Bruce and the testifying officer following him. The officer testified that the other officer "attempted to open [the car's] trunk," and at that juncture, was interrupted by Bruce's attorney's objection. At the suppression hearing that followed, Bruce's attorney argued "there was no search warrant and no consent to search the vehicle . . . they took the keys out of the house [without] permission . . . they were just picked up by the police, whisked outside, and the car attempted to be opened at that point." He sought to suppress the body found in the trunk, arguing that the seizure of the keys and the search of the car were beyond the scope of Bruce's consent. The State responded by referencing a different officer's testimony from "yesterday" to the effect that Bruce showed the officer which remote button to use on the key fob to open the trunk. From this representation, the judge ruled that the body would have been inevitably discovered and denied Bruce's motion to suppress.

The record reveals that the only testimony the previous day was taken at the pretrial *Jackson v. Denno*[4] hearing held following Bruce's motion to suppress his oral statements made to police officers. Prior to hearing that motion, the parties agreed that the Fourth Amendment suppression issue would be taken up at trial. Assuming it was proper for the State to reference testimony from the *Jackson v. Denno* hearing at the Fourth Amendment suppression hearing, the officer's testimony at the *Jackson v. Denno* hearing was:

> Q. And did you have opportunity to look in a car?

---

[4] 378 U.S. 368 (1964).

A.  Yes, I did.

Q.  And did you have the opportunity to open the trunk?

A.  Yes, sir.

Q.  Once the remote was activated and the trunk popped open, we discovered that there was a body in the trunk of the car.

In other words, there was no testimony of Bruce's consent to seize the car keys or to search the trunk the "day before" at the *Jackson v. Denno* hearing.

On direct appeal, Bruce's single issue asked whether the trial court erred in denying Bruce's Fourth Amendment suppression motion "when the police took keys to the car from the residence without consent and without a search warrant."  The Court of Appeals accurately repeated the scope of Bruce's consent, but then recited the trial testimony of three officers, all of whom testified **after** the suppression ruling. The Court of Appeals ultimately concluded that the circuit court's inevitable discovery ruling was unsupported by evidence and also suffered from "inadequate findings," and remanded the case to circuit court for "findings consistent with [its] opinion."

On rehearing to the Court of Appeals, Bruce reminded the court that his argument went to the seizure of the keys without consent or a warrant, which he contended, rendered the search of the automobile trunk the fruit of the poisonous tree.[5] Further, he argued that the State should not be permitted to introduce new evidence on remand, and that on this record, the denial of his suppression motion was patent error.  The State admitted that the solicitor was incorrect in representing that there was evidence of consent at the *Jackson v. Denno* hearing, but argued that the inevitable discovery ruling should have been affirmed because evidence introduced after the suppression hearing supported a finding that Bruce consented to opening the trunk.[6]  The Court of Appeals denied the requests for rehearing.

The issue which Bruce has presented throughout these proceedings is whether his consent to a **search** request by law enforcement to "come inside and take a quick look and make sure that [the victim] wasn't inside" was sufficiently broad to permit the officers to **seize** the car keys.  In my view, the majority elides this point by

---

[5] *See Wong Sun v. United States*, 371 U.S. 471 (1963).
[6] *See* State's pet. for rehearing at App. p. 15, citing ROA pp. 126-127, 145, 156-158, 168-169.

finding the scope of Bruce's consent "to come inside" the apartment included consent to search the vehicle's trunk. I cannot agree. *See Walter v. United States*, 447 U.S. 649 (1980) (consent limited to scope of terms, e.g., consent to search garage does not implicitly authorize search of adjoining house). Further, I cannot agree with the majority that the burden is on the citizen to object to law enforcement's violation of his Fourth Amendment rights rather than on law enforcement to respect them. In *United States v. Jones*, 356 F.3d 529 (4th Cir. 2004), the court held that when a defendant "gives his general and unqualified consent for an officer to search a particular area, the officer does not need to return to ask for fresh consent to search a closed container located within that area." *Id.* at 534. Obviously the car trunk was not within the apartment. In my opinion, the majority's reliance on *Jones* is misplaced, especially in light of *United States v. Neely*, 564 F.3d 346 (4th Cir. 2009). The *Neely* court held that while silence is indicative that consent extends to item in the area expressly consented to, consent to the search of a car trunk does not include the interior of the car itself. In my opinion, these decisions provide support for Bruce, not the State.

The seizure of the car keys exceeded the scope of Bruce's consent, and there was nothing in evidence to support the trial court's "inevitable discovery" ruling when made, much less to support the consent theory championed on appeal and on certiorari. In my opinion, the trial court erred in failing to grant Bruce's motion to suppress, and nothing in our jurisprudence authorizes a remand to the circuit court to allow the State a "do-over." Further, the State's suggestion that Bruce may lack standing to contest the search of the victim's automobile's trunk ignores his argument. Bruce's Fourth Amendment rights were violated by the unlawful seizure of the car keys from his home.

I agree with the majority that the Court of Appeals erred in its mandate in this case. I respectfully dissent on the merits and would reverse the trial court's denial of Bruce's motion to suppress the body as the fruit of the poisonous tree. I would therefore reverse Bruce's murder conviction and sentence and remand for a new trial. Of course, any evidentiary issue must be decided on the record made at that new proceeding. *See, e.g. State v. Steadman*, 216 S.C. 579, 59 S.E.2d 168 (1950) (at retrial "each party must offer his evidence anew, just as though there had been no previous trial; and when it is so offered it necessarily becomes subject to any legal objection which may be taken to it").